[Civ. No. 29026. First Dist., Div. One. May 10, 1971.]

LLOYD THOMAS MARTIN et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
ANNABELLE M. MARTIN et al., Real Parties in Interest.

**COUNSEL**

Stephen Manley, Grace M. Kubota, Joel G. Schwartz, Edward Newman and William H. Penaat for Petitioners.

No appearance for Respondent.

Evelle J. Younger, Attorney General, John T. Murphy and Gloria F. DeHart, Deputy Attorneys General, for Real Parties in Interest.

## OPINION

**ELKINGTON, J.**—In their "Petition for Writ of Certiorari and/or Prohibition," petitioners attack the constitutionality of Code of Civil Procedure section 1209.5. This section provides:

"When a court of competent jurisdiction makes an order compelling a parent to furnish support or necessary food, clothing, shelter, medical attendance, or other remedial care for his child, proof that such order was made, filed, and served on the parent or proof that the parent was present in court at the time the order was pronounced *and proof of noncompliance therewith shall be prima facie evidence of a contempt of court.*" (Italics added.)

■ Their first contention is that the statute, creating "prima facie evidence of a contempt of court," denies to the alleged contemner due process of law under the Fourteenth Amendment. They argue: "Since it is necessary in order to find an individual to be in contempt of court that it be shown he had the ability to comply with the previous court order and willfully failed to do so, the ultimate effect of section 1209.5 is that the facts of ability to comply and willful failure to comply are presumed from the facts that he had knowledge of the order and did not comply with it. It is the position of petitioners that such a statutory presumption is 'irrational' or 'arbitrary' and hence a denial of due process of law."

Reliance is placed upon *Tot* v. *United States,* 319 U.S. 463 [87 L.Ed. 1519, 63 S.Ct. 1241], and *Leary* v. *United States,* 395 U.S. 6 [23 L.Ed.2d 57, 89 S.Ct. 1532].

In *Tot* the United States Supreme Court struck down as unconstitutional a federal statute (15 U.S.C. § 902 (f)) which provided that the possession of a firearm or ammunition by any person convicted of a crime of violence shall be presumptive evidence that the firearm or ammunition was shipped or transported by such person in interstate commerce. The court found the statute's presumption to be unsupported by reason. It was held (pp. 467-468 [87 L.Ed. pp. 1524-1525]), that the controlling test for determining the validity of a statutory presumption was that there be a rational connection between the fact proved and the fact presumed, and "where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the Legislature" to create such a rule. (P. 468 [87 L.Ed. p. 1525].)

In *Leary* the court considered another federal statute (21 U.S.C. § 176a) which imposed criminal sanctions on one who " 'knowingly, with intent to

defraud the United States, imports or brings into the United States marijuana contrary to law . . ., or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marijuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law. . . .' " (395 U.S. at p. 30 [23 L.Ed.2d at p. 78].) The statute further provided: "Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marijuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury." Constitutional fault was found, the court holding (p. 36 [23 L.Ed.2d p. 82]) that a "statutory presumption must be regarded as 'irrational' or 'arbitrary' and thus unconstitutional unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend."

The rule announced by *Tot* and *Leary* has long been accepted and applied in California. In *People* v. *Stevenson,* 58 Cal.2d 794, 797 [26 Cal.Rptr. 297, 376 P.2d 297], it is said, "The rule is settled that a presumption of one fact from evidence of another is violative of due process if there is no rational connection between the fact proved and the fact presumed. . . ."

Since *Tot, Leary* and *Stevenson* unquestionably state the applicable constitutional principles, our immediate task is to determine whether section 1209.5 conforms to the standards there announced. The question before us may accordingly be summarized as follows: May it reasonably be said that the presumed facts of section 1209.5, i.e., petitioners' ability, and willful failure, to pay support, is more likely than not to flow from the proof, (1) that the court made a support order, thus finding an ability to pay at the time of the order, and (2) that petitioners had knowledge of the order? For the reasons which follow we have concluded that this question must be answered affirmatively.

As indicated, inherent in an order for child support is a determination of a present ability to make the required payments. It seems reasonable to infer that more likely than not such an ability will continue. (Cf., Civ. Code, § 3547—"A thing continues to exist as long as is usual with things of that nature.") Furthermore, one ordered to pay such support who for one reason or another finds himself, in whole or in part, unable to do so, is permitted to, and usually does, apply to the court for an appropriate modification of the order. From a finding of ability to pay at the time of the order and the failure to seek its modification, inferences may reasonably be drawn that an ability to meet the ordered payments continues, thus

establishing the statute's "prima facie evidence of a contempt." We cannot say that these inferences do "not have a reasonable relation to the circumstances of life as we know them"; the Legislature's enactment of Code of Civil Procedure section 1209.5 was therefore not proscribed by the rule announced in *Tot, Leary* and *Stevenson*.

 Petitioners' remaining contention is that section 1209.5 is somehow violative of the Fifth Amendment.

They first point out, correctly, that a contempt proceeding, even though arising in a civil action, is quasi criminal in nature and the respondent therein is to be accorded all of the constitutional and procedural safeguards of any criminal proceeding. (See *In re Liu,* 273 Cal.App.2d 135, 141 [78 Cal.Rptr. 85].)

Petitioners then argue:

"The result of Code of Civil Procedure section 1209.5 is to shift the burden of going forward with the evidence to the alleged contemnor when the moving party has established the *prima facie* evidence required therein. . . . In effect this presents an illusory choice to the defendant because if he exercises his right to remain silent and not be sworn as a witness, he will be adjudged in contempt of court without any further evidence being offered by the moving party. All the essential elements of a contempt of court will have been proven by virtue of the presumption allowed by the said code section. As a consequence of the said presumption, the accused contemnor is forced to waive his Fifth Amendment protection against self-incrimination should he wish to have the opportunity to contest the alleged contempt. He must overcome the rebuttable presumption of contempt of court by offering testimony as to his lack of ability to comply with the previous court order and that his failure was not willful. The application of the said statute results in a chilling effect on the constitutionally protected right of petitioners to refrain from offering self-incriminating testimony."

In support of this contention petitioners first cite *In re Allen,* 71 Cal.2d 388 [78 Cal.Rptr. 207, 455 P.2d 143]. There a probation condition requiring a defendant in a criminal case to reimburse the county for court-appointed counsel was found to be invalid; it was held that such a condition was "an impediment to the free exercise of" a right to counsel guaranteed by the Sixth Amendment. Their remaining authority is *United States* v. *Jackson,* 390 U.S. 570 [20 L.Ed.2d 138, 88 S.Ct. 1209], where the United States Supreme Court found to be unconstitutional a federal statute providing that upon a defendant's jury waiver, the death penalty could not be imposed. The court there said (p. 582 [20 L.Ed.2d p. 147]): "Whatever might be

said of Congress' objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights. . . . [T]he question is whether that effect is unnecessary and therefore excessive. . . ."

We note that neither *Allen* nor *Jackson* hold that a statute which might in any conceivable or questionable way touch upon the exercise of a constitutional right is for that reason invalid. Indeed, as indicated, the court in *Jackson* was careful to point out that it was holding void only such statutes (p. 582 [20 L.Ed.2d p. 147]) "that *needlessly* chill the exercise of basic constitutional rights," and stated that "the question is whether that effect is *unnecessary* and therefore excessive." (Italics added.)

■ It has long been held that when *reasonably necessary,* or otherwise reasonably required for reasons of policy or convenience, the burden of proof or of going forward with the evidence, in certain circumstances may be placed upon the defendant in a criminal action. Such a burden rests upon the defendant: on a charge of false imprisonment, to establish the defense of lawful arrest (*People* v. *Agnew,* 16 Cal.2d 655, 663 [107 P.2d 601]); on a charge of bigamy, to prove a good faith marriage (*People* v. *Vogel,* 46 Cal.2d 798, 803 [299 P.2d 850]); on a charge of forgery, to show authority to sign another's name (*People* v. *Hassen,* 144 Cal.App.2d 334, 343 [301 P.2d 80]); to establish the defense of insanity (*People* v. *Glover,* 257 Cal.App.2d 502, 510, 511 [65 Cal.Rptr. 219]), or entrapment (*People* v. *Terry,* 44 Cal.2d 371, 372 [282 P.2d 19]), or double jeopardy (*People* v. *Mason,* 200 Cal.App.2d 282, 285 [19 Cal.Rptr. 240]); to establish as unlawful an arrest made on a warrant (*Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23]); and to prove a valid doctor's prescription, on a charge of possession of narcotics (*People* v. *Bill,* 140 Cal.App. 389, 392 [35 P.2d 645]). In each of these situations one may possibly find a tendency to "chill the exercise" of Fifth Amendment rights; nevertheless since the "shifting of the burden" is not required "needlessly" or "unnecessarily," constitutional fault has never been found.

■ A "Fifth Amendment" attack on section 1209.5 appears never to have been previously made or resolved. A similar contention, however, has been repeatedly made on the closely analogous section 270 of the Penal Code. Section 270 relates to a true criminal offense, not a *quasi* criminal proceeding as embodied in section 1209.5.

Penal Code section 270 provides that it is a misdemeanor, and under some circumstances a felony, for a father to willfully omit without lawful excuse, to provide for his minor child. The statute then states:

"Proof of abandonment or desertion of a child by such father, or the omission by such father to furnish necessary food, clothing, shelter or

medical attendance or other remedial care for his child *is prima facie evidence that such abandonment or desertion or omission to furnish necessary food, clothing, shelter or medical attendance or other remedial care is wilful and without lawful excuse.*" (Italics added.)

In *In re Bryant,* 94 Cal.App. 791, 794 [271 P. 926], the petitioner contended "that section 270, insofar as it attempts to make proof of abandonment, desertion, or omission, etc. *prima facie* proof that such omission or abandonment was wilful and without lawful excuse, is in violation of that part of section 13, article I, of the constitution [California's counterpart of the Fifth Amendment], which states that *'no person shall be compelled in any criminal case to be a witness against himself,* or be deprived of life, liberty or property without due process of law.' . . ." (Italics added.) The court disagreed, stating: "Section 270 merely fixes the *quantum* of evidence which, until overcome, establishes beyond a reasonable doubt the guilt of a defendant charged with a violation of that section; *it does not compel a defendant to be a witness against himself.*" (Italics added.) This holding of *Bryant* has been consistently followed by the courts of this state. (See *People* v. *Johnson,* 258 Cal.App.2d 705, 708 [66 Cal.Rptr. 99]; *People* v. *Crawford,* 205 Cal.App.2d Supp. 858, 862 [23 Cal.Rptr. 566]; *In re Clarke,* 149 Cal.App.2d 802, 807-808 [309 P.2d 142]; *People* v. *Norton,* 47 Cal.App.2d 139, 142 [117 P.2d 402]; *People* v. *Nelson,* 42 Cal.App.2d 83, 85 [108 P.2d 51]; *People* v. *Yates,* 114 Cal.App. 782, 788 [298 P. 961].) The rule is equally applicable to Code of Civil Procedure section 1209.5, here under attack.

For the reasons we have stated we hold that Code of Civil Procedure section 1209.5 does no violence to the Fifth Amendment.

The petition for a peremptory writ of prohibition is denied; the alternative writ is discharged. The "Interim Order[s] re Contempt" in Martin v. Martin, superior court No. 203840, filed September 11, 1970, and Kerley v. Davis, superior court No. 165314, filed September 21, 1970, are affirmed.

Molinari, P. J., and Sims, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied July 7, 1971.