[No. G003512. Fourth Dist., Div. Three. Apr. 30, 1986.]

In re PHILLIP WILLIAM FEIOCK on Habeas Corpus.

**COUNSEL**

Ronald Y. Butler, Public Defender, Frank Scanlon, Assistant Public Defender, Richard Aronson, Richard Schwartzberg and Mark Licker, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, William W. Bedsworth, Bruce M. Patterson and E. Thomas Dunn, Jr., Deputy District Attorneys, for Real Party in Interest Wife.

**OPINION**

**WALLIN, J.**—Phillip Feiock seeks relief from a judgment of contempt for failure to pay child support. His primary contention concerns the constitutionality of Code of Civil Procedure section 1209.5, which requires the court presume prima facie evidence of contempt after proof of noncompliance with a valid court order.

Feiock was ordered to pay child support for his three children as part of a dissolution action. Thereafter, in 1983 the district attorney filed an action under the Uniform Reciprocal Enforcement of Support Act, which resulted in a temporary support order of $150 per month. Feiock's failure to pay anything between September of 1984 and February of 1985 resulted in a contempt action brought by the district attorney.

At the adjudicated contempt hearing, the parties stipulated there was a valid court order requiring Feiock to pay $150 per month directly to the district attorney's office. They also agreed Feiock was present in court when the order was made. The prosecution then offered documentary evidence from its own internal records showing Feiock's poor payment history. The trial judge suggested those records needed some explanation; an employee familiar with the record-keeping procedures testified at the judge's request. Feiock's motion for judgment of acquittal under Penal Code section 1118 was denied after the judge ruled the presumption mandated by Code of Civil Procedure section 1209.5 applied. Feiock then testified, essentially trying to prove his inability to pay the court-ordered support. Regardless, the trial judge sustained the majority of the contempt allegations.

Code of Civil Procedure section 1209.5 provides: "When a court of competent jurisdiction makes an order compelling a parent to furnish support or necessary food, clothing, shelter, medical attendance, or other remedial care for his child, proof that such order was made, filed, and served on the parent or proof that the parent was present in court at the time the order was pronounced and proof of noncompliance therewith shall be prima facie evidence of a contempt of court."

Feiock asserts Code of Civil Procedure section 1209.5 is unconstitutional because it is a mandatory presumption which shifts the burden of proof to the defendant, requiring him to prove his innocence. Our Supreme Court recently discussed the problems raised by the use of presumptions in criminal cases in *People* v. *Roder* (1983) 33 Cal.3d 491 [189 Cal.Rptr. 501, 658 P.2d 1302]. The Court found Penal Code section 496 prescribed an unconstitutional mandatory presumption because it relieved the prosecution from proving every element of the offense beyond a reasonable doubt. The Court's analysis in *Roder* mandates we reach the same conclusion with regard to Code of Civil Procedure section 1209.5.

We begin by recognizing our duty to presume the constitutionality of a statute and resolve any doubts in favor of its validity. (*People* v. *Globe Grain & Mill Co.* (1930) 211 Cal. 121, 127 [294 P. 3].) We also recognize the impact our decision will have. We are cognizant that "[i]nferences and presumptions are a staple of our adversary system of factfinding. . . . Nonetheless, in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt. [Citations.]" (*Ulster County Court* v. *Allen* (1979) 442 U.S. 140, 156 [60 L.Ed.2d 777, 791, 99 S.Ct. 2213], quoted in *People* v. *Roder, supra,* 33 Cal.3d at p. 497.)

Relying on relatively recent authority from the United States Supreme Court, *Roder* emphasized the distinction between permissive presumptions and mandatory presumptions. The former allows but does not require the inference; the latter requires the inference unless the defendant rebuts it. We borrow liberally from *Roder*, which quotes *Ulster* extensively: "With respect to a permissive inference, the [*Ulster*] court reasoned that '[b]ecause this [type of device] leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference.' [*Ulster County Court* v. *Allen, supra*, 442 U.S. at p. 157 [60 L.Ed.2d at p. 792].] . . . [¶] On the other hand, the court recognized that '[a] mandatory presumption is a far more troublesome evidentiary device' insofar as the reasonable doubt standard is concerned. (*Ibid.*) Because such a presumption tells the trier of fact that it *must* assume the existence of the ultimate, elemental fact from proof of specific, designated basic facts, it limits the jury's freedom independently to assess all of the prosecution's evidence in order to determine whether the facts of the particular case establish guilt beyond a reasonable doubt. For that reason, the court concluded that a mandatory presumption must be judged 'on its face,' not 'as applied' (*id.*, at pp. 157-160 [60 L.Ed.2d at pp. 792-794]), and that 'since the prosecution bears the burden of establishing guilt, it may not rest its case on [such] a presumption unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt.' (*Id.*, at p. 167 [60 L.Ed.2d at p. 798].)'' (*People* v. *Roder, supra*, 33 Cal.3d at p. 498, fn. omitted.)

Code of Civil Procedure section 1209.5 establishes a mandatory presumption within the meaning of *Ulster* and *Roder*. (See also *Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450].) It requires the inference rather than suggesting the inference may logically follow. The trier of fact is required to find a prima facie case of contempt whenever a valid court order is not obeyed. Although rebuttable, the presumption actually shifts the burden of proof to the accused. (*People* v. *Roder, supra*, 33 Cal.3d at p. 501.)

Contempt is quasi-criminal and requires proof beyond a reasonable doubt. (*In re Witherspoon* (1984) 162 Cal.App.3d 1000, 1001-1002 [209 Cal.Rptr. 67].) Requiring the finder of fact to presume a prima facie case of contempt upon a showing of noncompliance with a valid court order lessens the prosecution's burden of proof by obviating the necessity of proving an essential element of the case: the ability to pay. (*Nutter* v. *Superior Court* (1960) 183 Cal.App.2d 72 [6 Cal.Rptr. 404].) This lessening of the prosecution's burden is a constitutional defect, unless the basic fact proved—

noncompliance with a valid court order—"*compels* the inference of guilt beyond a reasonable doubt." (*People* v. *Roder, supra,* 33 Cal.3d at p. 498, fn. 7.)

Even though a court may determine a parent has the ability to pay a certain amount of support, it does not necessarily follow failing to comply with an order to that effect means the parent had the ability to pay thereafter. Thus, the basic fact—noncompliance with a valid court order—does not compel the conclusion that the alleged contemner had the ability to pay. While we recognize the inference is compelling for some period of time following the court's order and initial determination of ability to pay, we review the constitutionality of the presumption on its face, not as applied. (*People* v. *Roder, supra,* 33 Cal.3d at p. 498; *People* v. *Milham* (1984) 159 Cal.App.3d 487, 504 [205 Cal.Rptr. 688].) Obviously, financial circumstances change. The inference of continuing ability to pay weakens with the passage of time.

■ Real party in interest argues a parent can petition the court for modification of the support order any time there is a change in financial condition. We are therefore urged to conclude it was Feiock's responsibility to comply with the order unless it was modified; indeed, he has a continuing obligation to comply with the order even as his writ petition is pending. True. However, his obligation to abide by the court's order is founded on ability to pay. Ability to pay makes noncompliance wilful; it is not contempt if not wilful because of inability to pay. Therefore, despite the continuing obligation to comply, Feiock "may literally 'sit on his hands,'" and defend any contempt allegation by relying on the prosecution's burden of proof: its burden to affirmatively show, beyond a reasonable doubt, his ability to comply with the order, to wit, his ability to pay. (*People* v. *Milham, supra,* 159 Cal.App.3d at p. 504, quoting from *Coffin* v. *United States* (1895) 156 U.S. 432 [39 L.Ed. 481, 15 S.Ct. 394].) He need not seek modification of the order before relying on this defense to contempt.[1]

■ By the same token, the Legislature may not take away this defense by imposing a mandatory presumption compelling a conclusion of guilt without independent proof of an ability to pay. The statute which purports to require that conclusion, section 1209.5 of the Code of Civil Procedure, is unconstitutional because the mandatory nature of the presumption lessens the prosecution's burden of proof.

Our analysis does not entirely ignore *Martin* v. *Superior Court* (1971) 17 Cal.App.3d 412 [95 Cal.Rptr. 110], which upheld the constitutionality of

---

[1]Of course the contempt action has no effect on his continuing obligation to comply with the court order until it is modified.

Code of Civil Procedure section 1209.5 under similar attack.. However, *Martin* predated *Roder* and the United States Supreme Court decisions *Roder* relied on. *Martin* did not have the benefit of our Supreme Court's subsequent analysis of mandatory presumptions which affect the burden of proof in criminal cases. Even more importantly, *Martin* relies on *People* v. *Stevenson* (1962) 58 Cal.2d 794 [26 Cal.Rptr. 297, 376 P.2d 297], which involved a rebuttable presumption and is of questionable authority in light of *Roder*. *Martin* stated there is no constitutional infirmity unless " 'there is no rational connection between the fact proved and the fact presumed. . . .' " (*Martin* v. *Superior Court, supra,* 17 Cal.App.3d at p. 415, quoting from *People* v. *Stevenson, supra,* 58 Cal.2d at p. 797.) As previously noted, a rational connection is insufficient. A mandatory presumption is constitutionally infirm unless "the basic fact proved *compels* the inference of guilt beyond a reasonable doubt." (*People* v. *Roder, supra,* 33 Cal.3d at p. 498, fn. 7.) In light of recent authority, *Martin* is unpersuasive.

After Feiock stipulated to the validity of a court order for support, made in his presence, and the prosecution proved noncompliance with that order, the trial judge relied on the mandatory presumption of Code of Civil Procedure section 1209.5 and denied his motion for judgment of acquittal. The motion should have been granted because the presumption is unconstitutional. We need not reach the balance of Feiock's complaints.

For future guidance, however, we determine the statute in question should be construed as authorizing a permissive inference, but not a mandatory presumption. (*People* v. *Roder, supra,* 33 Cal.3d at p. 507.) The Attorney General in *Roder* contended Penal Code section 496 should not be struck down in its entirety, and that the Court had an obligation to interpret the statute to preserve its constitutionality whenever possible. (*Id.,* at p. 505.) The Court agreed and held, on retrial, the court "should fashion an appropriate instruction, which informs the jury of the permissive inference but at the same time makes clear that the prosecution retains the burden of proving every element of the offense beyond a reasonable doubt. [Citation.]" (*Id.,* at p. 507.)

The same logic applies here. A permissive inference of wilful failure to comply in spite of an ability to pay may constitutionally be drawn from the fact a parent has failed to comply with a valid court order which was made after a determination of his or her then ability to pay. But the inference is permissive only. The prosecution retains the burden of proving every element of the offense, including ability to pay at the time payment was due,

beyond a reasonable doubt.[2] In the future, Code of Civil Procedure section 1209.5 should be construed as allowing a permissive inference.

The judgment of contempt is annulled.

Trotter, P. J., and Sonenshine, J., concurred.

The petition of real party in interest Wife for review by the Supreme Court was denied August 14, 1986. Lucas, J., was of the opinion that the petition should be granted.

---

[2]Ability to pay may be shown by some evidence of the alleged contemner's financial condition at the time payments were due. For example, the moving party might subpoena employment records. The only effect of our holding today is to eliminate using the presumption as conclusive evidence of ability to comply with the court order.